# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 17-0912** (Greenbrier County 16-F-121)

**Larry Vernon Hoke,**
**Defendant Below, Petitioner**

**FILED**

**October 12, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Larry Vernon Hoke, by counsel Paul S. Detch, appeals the Circuit Court of Greenbrier County's September 7, 2017, order sentencing him to ten years of incarceration following his conviction of one count of voluntary manslaughter. The State of West Virginia, by counsel Robert L. Hogan, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in refusing to permit a witness to read from his medical records and that the State "commit[ted] reversible error" by making certain statements during closing argument.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2015, petitioner was involved in a gunfight with his stepdaughter, Glenda Hull[1] ("the victim"), during which petitioner was wounded and the victim was killed. At the time of the incident, the victim lived in a trailer across Route 92 from petitioner's home in Greenbrier County. According to petitioner, the trailer, owned by his son, was in the process of being moved and had the power turned off. Petitioner indicates that "no one was supposed to be living in it." Of relevance to the incident, petitioner also alleges that he "had long[-]standing troubles with" the victim related to allegations that she stole property from his family in order to support a drug habit.

---

[1]Throughout his brief, petitioner refers to the victim as "Glenna Hull." However, the record on appeal, including the indictment charging petitioner with the victim's murder, refers to her as "Glenda Hull."

On the day in question, petitioner was at the trailer when the victim arrived and entered the dwelling. According to petitioner's testimony, he followed the victim inside, although he acknowledges that his testimony regarding "his purpose [for following the victim was] unclear[.]" Indeed, petitioner's testimony established that he either wanted to obtain the victim's keys to the trailer or confront her about allegations that she had stolen guns from him and later sold them. Petitioner testified that the victim shot him with a shotgun as soon as he entered the trailer. As petitioner attempted to "talk [the victim] out of any further hostilities[,]" he claims that she then shot him a second time. At this point, petitioner admits that he drew his .45 caliber pistol and shot in the victim's direction five or six times from the same location. The State, however, contended that petitioner confronted the victim about her keys to the trailer outside the dwelling and then followed her inside, where petitioner fired on the victim first and she returned fire in self-defense. Petitioner fled the scene and, after being taken into custody, was eventually transported to Roanoke, Virginia, for medical treatment.

As a result of this incident, petitioner was indicted on one count of first-degree murder in October of 2016. In May of 2017, petitioner's jury trial commenced. During trial, two officers with the Greenbrier County Sheriff's Department testified that .45 caliber shell casings were found in several locations both inside and outside the trailer, including one shell casing found on the back porch, one just inside the door to the back porch, and two further inside the kitchen and hallway. Testimony from law enforcement further established that shell casings normally come to rest in the vicinity of where the bullet was discharged. In his defense, petitioner testified to his version of events as set forth above, including his assertion that the victim shot him twice during the gunfight. Additionally, petitioner indicated that he wished to call his daughter, Misty Hill, to testify regarding his injuries. Ms. Hill is a nurse who assisted petitioner while recuperating following the altercation at issue. Specifically, petitioner sought to have Ms. Hill read from his medical records that "ma[d]e reference to the fact that [petitioner] was suffering from multiple gunshot wounds." According to petitioner's counsel, Ms. Hill was "willing to repeat" these records. During a discussion with the circuit court, however, concerns were raised about the hearsay nature of the potential testimony, the lack of authenticity of these records, and the witness's ability to provide a medical opinion. Ultimately, the circuit court did not make a ruling on the admissibility of this testimony, but petitioner's counsel indicated that he would "try to stay away from it" during his examination of Ms. Hill. Petitioner did not attempt to introduce this testimony during trial or otherwise introduce the medical records in question. At the conclusion of the trial, the jury found petitioner guilty of voluntary manslaughter. That same month, petitioner filed a motion for a new trial, which the circuit court later denied.

In September of 2017, the circuit court sentenced petitioner to ten years of incarceration for his conviction of voluntary manslaughter. It is from the circuit court's sentencing order that petitioner appeals.

On appeal, petitioner argues that the circuit court erred in refusing to permit Ms. Hill to read from his medical records during her testimony and that the State committed reversible error in arguing during its closing argument that petitioner did not produce any evidence to

corroborate his testimony that the victim shot him twice during their altercation.[2] In support of these assignments of error, petitioner predicates the State's alleged improper remarks during closing on the circuit court's refusal to permit him to allow Ms. Hill to read from his medical records. Essentially, petitioner argues that because he was denied the ability to introduce evidence of his multiple gunshot wounds, the State improperly referenced evidence not admitted at trial during its closing and impermissibly shifted the burden of proof to petitioner. We do not agree.

In regard to his assignment of error concerning his allegation that Ms. Hill was not permitted to read from his medical records, it is important to note that the circuit court did not deny petitioner the right to introduce evidence of his medical records. Instead, the record clearly shows that petitioner's counsel voluntarily abandoned his planned questioning of Ms. Hill in regard to the medical records without securing a ruling from the circuit court on the admissibility of that evidence, thus precluding review of the issue on appeal. Prior to Ms. Hill's testimony, the following discussion between the parties and the circuit court occurred:

> THE COURT: Please be seated. Counsel, is there any matter we need to address before the jury returns?
>
> [DEFENSE COUNSEL]: Yes, Your Honor, there is something Mr. Via [the prosecutor] and I have been discussing here . . . . The problem that I have is that the next witness will be a Misty Hill. She is highly trained as a nurse. She's ER nurse. She's been an operating room nurse, and she is the daughter of [petitioner]. She went to Roanoke to attend and care for him and knows about his injuries. Now, then, I really don't want to call her per se as an expert simply because she is the daughter, but she also is a highly trained observer. [W]e have some of the medical records from Roanoke in which they make reference to the fact that [petitioner] was suffering from multiple gunshot wounds. She's pulled

---

[2]In the section of his appellate brief labeled "Statement of the Case," petitioner impugns the State's investigation and calls into question certain facts based on several issues he perceives as problematic, including his assertion that "crime scene management was a disaster" following the gunfight. We note, however, that petitioner provides no argument related to these assertions and does not challenge the sufficiency of the evidence on appeal. At best, in the argument section of his appellate brief, petitioner characterizes the State's evidence against him as weak and highlights his testimony concerning the incident in question. He does not, however, at any point raise any argument concerning the sufficiency of the evidence against him or otherwise cite to any authority regarding the sufficiency of the evidence in criminal proceedings. Accordingly, we decline to address any allegations concerning the evidence, given that he provides no argument in support of these general allegations. *See* Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure (requiring that briefs "must contain an argument exhibiting clearly the points of fact and law presented . . . and citing the authorities relied on" and permitting the Court to "disregard errors that are not adequately supported by specific references to the record on appeal").

them out and is willing to repeat them or discuss them. I'm not sure what I'm going to do when we get there.

THE COURT: I'm pretty sure what [the prosecutor] is going to do if you get there. Mr. Via?

[Prosecutor]: Yes, sir. I don't have an objection if Ms. Hill has personal knowledge of how many times [petitioner] was shot or something like that, but what I do object to is reciting from the medical record anything that would constitute a medical opinion because she's just not qualified to give it.

THE COURT: Well, if she's simply reciting from a record, it's hearsay.

[DEFENSE COUNSEL]: Well, it's a business records exception.

THE COURT: Do you have any way of establishing that it's a business record?

[DEFENSE COUNSEL]: Well, we've agreed to provide it to them, but we don't have to authenticate it, but it is a business record. It's a medical record.

[Prosecutor]: Again, it is the accurate record because the State obtained them ourselves as well, but that doesn't mean you can come in here and recite a medical opinion. I can't cross-examine a business record. And first of all, I think, Judge, that the statements referencing the two shots in these records are patient reporting anyway. I don't think it is a medical diagnosis, but for her to read it off as if it is, is going to be a huge problem.

[DEFENSE COUNSEL]: Okay. I hate to say that I'm reading faces of judges, but you don't seem to be like you're going to admit it. I will try to stay away from it, okay?

At this point, petitioner called Ms. Hill to testify and thereafter did not question her about the medical records at issue. On appeal to this Court, petitioner specifically alleges that the circuit court erred in not permitting Ms. Hill to "read[] from the medical records." As stated above, this argument wholly mischaracterizes the nature of the proceedings below, given that the circuit court made no such ruling on petitioner's stated desire for Ms. Hill to read from the records in question. Instead, it was petitioner's abandonment of this line of questioning that resulted in no actual ruling on this issue.

In the context of the admissibility of evidence, we have routinely held that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 W.Va. 469 (1998). Here, we are precluded from reviewing this issue to determine whether the circuit court abused its discretion because petitioner prevented the circuit court from actually making an evidentiary ruling. Instead, he simply chose not to attempt to admit the evidence in

4

question. We have previously addressed failures to properly preserve issues for appeal as follows:

> "This Court will not consider an error which is not properly preserved in the record nor apparent on the face of the record." Syl. pt. 4, *State v. Browning*, 199 W.Va. 417, 485 S.E.2d 1 (1997). The raise or waive rule has been explained as part of a design "to prevent a party from obtaining an unfair advantage by failing to give the trial court an opportunity to rule on the objection and thereby correct potential error." *State v. Guthrie*, 205 W.Va. 326, 344, 518 S.E.2d 83, 101 (1999) (internal quotations and citation omitted). Further, we have noted that the raise or waive rule seeks to "prevent[ ] a party from making a tactical decision to refrain from objecting and, subsequently, should the case turn sour, assigning error (or even worse, planting an error and nurturing the seed as a guarantee against a bad result)." *State v. LaRock*, 196 W.Va. 294, 316, 470 S.E.2d 613, 635 (1996).

*State v. Larry A.H.*, 230 W.Va. 709, 716 n.19, 742 S.E.2d 125, 132 n.19 (2013). Here, petitioner denied the circuit court the opportunity to rule on the admissibility of any potential testimony from Ms. Hill by abandoning his attempt to introduce the same. Indeed, on review, this Court has no way of ascertaining what Ms. Hill's testimony would have been; what the medical records at issue contained; what the State's specific objection to the testimony would have been, if any; or how the circuit court would have ruled. For these reasons, we find that petitioner is entitled to no relief in this regard.

In regard to petitioner's second assignment of error, we decline to address petitioner's argument that the State committed reversible error in its closing argument. According to petitioner, the following statements by the State during its closing constitute reversible error:

> You know, a lot's been made about the severity of [petitioner's] injury, and I tried to make it clear earlier there is no dispute that he was shot. I'm sure you understand that, that we are not disputing that he was shot, but I want you and ask you to consider what credible testimony you heard from that chair besides [petitioner's] version of events, was any other witness able to credibly look at his injuries and describe that definitively as two shotgun injuries? Did you hear that? Anywhere? From anybody?

Specifically, petitioner argues that "the prosecuting attorney knew that this argument was false and misleading" given that he attempted to introduce evidence of multiple gunshot wounds through Ms. Hill's testimony and "she was not permitted to read the medical records." As such, petitioner argues that the State impermissibly shifted the burden of proof "when it was the duty of the State to offer testimony he'd only been shot once." According to petitioner, the State had no evidence to support that he was shot only once.

However, it is important to note that petitioner did not object to the statements in question during trial. We have previously held that

"[f]ailure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a waiver of the right to raise the question thereafter either in the trial court or in the appellate court." Syl. pt. 6, *Yuncke v. Welker*, 128 W.Va. 299, 36 S.E.2d 410 (1945).

Syl. Pt. 3, *State v. Rollins*, 233 W.Va. 715, 760 S.E.2d 529 (2014). Accordingly, we find that petitioner has waived this issue for appeal. We further decline to apply plain error, as petitioner urges, given the fact that the State's comments during closing argument accurately reflected the evidence presented.[3] Regarding plain error, we have held as follows:

"Our standard of review for issues not properly preserved for appeal, or not presented to the trial court for resolution prior to an appeal, is plain error. There are four elements that must be shown to exist before plain error applies: "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

*State v. Davis*, 232 W.Va. 398, 407, 752 S.E.2d 429, 438 (2013). In support of his assignment of error, petitioner essentially argues that the State's comments were improper because the prosecutor knew he attempted to introduce evidence of multiple gunshots through Ms. Hill and that the State was not permitted to address evidence not admitted at trial. Again, we note that petitioner's abandonment of his attempt to introduce this evidence through Ms. Hill or any other witness does not constitute an exclusion. We further note that the State highlighting the fact that petitioner's testimony, including the number of times he was shot, was uncorroborated does not constitute an error, let alone an error that would trigger application of plain error. Accordingly, we find that petitioner is entitled to no relief.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 12, 2018

---

[3]It should also be noted that petitioner fails to cite any authority concerning plain error, the standard for obtaining relief under this doctrine, or otherwise apply such authority to the facts of his case. Instead, petitioner simply alleges that "[a]fter the Court's ruling on [Ms.] Hill, this argument should be treated as plain err [sic]."

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II suspended and therefore not participating.