**UNITED STATES of America, Appellee,**

v.

**John Phillip HEATER, Appellant.**

**No. 82–1419.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 28, 1982.

Decided Oct. 6, 1982.

Gene O'Daniel, Little Rock, Ark., for appellant.

George W. Proctor, U. S. Atty., Robert J. Govar, Asst. U. S. Atty., Little Rock, Ark., for appellee.

Before HEANEY, Circuit Judge, and STEPHENSON and HENLEY, Senior Circuit Judges.

HENLEY, Senior Circuit Judge.

John Phillip Heater appeals his conviction, following a jury trial, on drug conspiracy and substantive drug charges. We affirm.

In a three-count indictment filed in late 1981, appellant Heater was charged with a number of drug-related offenses. Count I alleged that from April 1, 1978 to October 29, 1979, Heater, Kimberly Carol Craig, and Robert David Hernandez[1] conspired (1) to possess with intent to distribute and (2) to distribute cocaine, see 21 U.S.C. §§ 841(a), 846 (1981). Count II alleged that appellant sold cocaine on October 12, 1979, id. § 841(a), and Count III asserted that on August 8 and September 17, 1979, he aided one Gary Engster in the sale of cocaine, id. § 841(a); 18 U.S.C. § 2 (1969). At the end of the trial the district judge[2] determined that the government had failed to make a submissible case on the charge of aiding the September 17 cocaine sale. All other

---

1. Heater was tried alone. Coconspirators Craig and Hernandez were still at large at the time this appeal was filed.

2. The Honorable G. Thomas Eisele, Chief Judge, United States District Court, Eastern District of Arkansas.

charges were submitted to the jury. Appellant was subsequently convicted on Count I and on the remaining portion of Count III.

On appeal Heater challenges the admission of certain testimony.[3] First, he contends that testimony elicited during direct examination of prosecution witness Michael Wood, who had previously been convicted on a state charge involving an alleged purchase of cocaine from Heater in October, 1979, was irrelevant and prejudicial to his case. Over objection by defense counsel Wood testified as follows:

Q Had you ever purchased cocaine from John Heater prior to this occasion in October of 1979?

A No, sir.

    *       *       *       *       *       *

Q Well, how did you know to contact him about it then?

A Been friends for a long time.

Q Had you bought any other drugs from him prior to that time?

At this point, defense counsel objected, stating: "We are in the cocaine business, not the other drugs...." After noting that the evidence was relevant on the issue of appellant's intent, an element of the offense of distributing cocaine, *see* 21 U.S.C. § 841(a) (1981),[4] the trial court overruled the objection. The testimony continued.

Q Had you purchased any other drugs from Mr. Heater prior to October of '79?

A Yes, sir.

Q What had you purchased from him?

    *       *       *       *       *       *

A Marijuana is the only thing I can really remember.

Q When had you purchased marijuana from him?

    *       *       *       *       *       *

A Back in high school.

Q When were you in high school?

A Graduated in 1972.

The admissibility of Wood's testimony under Federal Rule of Evidence 404(b)[5] to prove appellant's intent to distribute cocaine was doubtful at best. *See, e.g., United States v. Davis,* 657 F.2d 637 (4th Cir. 1981). Even if the admission of this evidence was error, however, in the circumstances presented here the error was harmless. Wood's statements related primarily to Count II of the indictment, which alleged a cocaine sale on October 12, 1979. Since appellant was acquitted of this particular offense, it is obvious that evidence of the alleged prior drug sale did not adversely influence the jury's verdict on this charge.

Notwithstanding the jury's clear rejection of this evidence and the corollary absence of any prejudice with respect to Count II, *see, e.g., United States v. Barnes,* 604 F.2d 121, 166 (2d Cir. 1979), *cert. denied,*

---

**3.** Appellant also argues that the evidence is insufficient to sustain his conviction on both counts. After carefully reviewing the trial transcript and the other evidence in the case, we conclude that this contention is without merit. *See, e.g., United States v. Burchinal,* 657 F.2d 985, 991 (8th Cir.), (jury verdict must be sustained if, taking the view most favorable to the government, it is supported by substantial evidence), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 646, 70 L.Ed.2d 622 (1981).

**4.** We note that under both the federal and Arkansas drug laws, intent is also an element of the offense of distributing marijuana. *See* 21 U.S.C. §§ 841(a), 812 Schedule I (1981); Ark. Stat.Ann. §§ 82–2617(a), 82–2614.2 Schedule VI (Cum.Supp.1981). Although appellant had not previously been convicted on any federal or state drug charges the trial court presumably reasoned that the relevance of the "other act" evidence, *i.e.,* the prior marijuana transaction,

derived at least in part from the identity of the requisite states of mind for each offense, *see, e.g., United States v. Dothard,* 666 F.2d 498, 502 (11th Cir. 1982); *United States v. Biondich,* 652 F.2d 743 (8th Cir.), *cert. denied,* 454 U.S. 975, 102 S.Ct. 527, 70 L.Ed.2d 395 (1981). In the circumstances of this case, the admissibility of the earlier drug sale was disputable, but, as we have noted in the text of our decision, did not result in prejudice to appellant.

**5.** Rule 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980); *United States v. Masterson,* 529 F.2d 30, 31 (9th Cir.), *cert. denied,* 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833 (1976), appellant alleges that the "other act" evidence had a carryover effect that tainted the jury's verdicts on the other charges, particularly the charge of aiding and abetting a cocaine sale contained in Count III of the indictment. Even assuming such a carryover effect, the strength of the other evidence supporting appellant's convictions on Counts I and III makes it quite unlikely that the evidence in question had more than slight, if any, effect on the jury's finding of guilt. The evidence on the conspiracy charge consisted of the testimony of several witnesses who personally observed the activities of appellant and his coconspirators, telephone records of hundreds of calls between the various residences of Craig and Hernandez in Miami, Florida and of appellant in Little Rock, Arkansas during the course of the conspiracy, the drugs seized, and a damaging statement by appellant at the time of his arrest. This evidence demonstrated that appellant played more than a bit part in the illegal scheme. Likewise, the testimony of Gary Engster clearly established appellant's role as an aider and abettor of the August 8, 1979 cocaine sale. In light of this strong evidence of guilt, we cannot say that the admission of the challenged evidence, even if error, was prejudicial. *See, e.g., United States v. Slade,* 627 F.2d 293 (D.C.Cir.), *cert. denied,* 449 U.S. 1034 (1980); *United States v. Jackson,* 588 F.2d 1046 (5th Cir.), *cert. denied,* 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979); *United States v. Jones,* 545 F.2d 1112 (8th Cir. 1976), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977).

Appellant also takes exception to testimony by Mary Beth Herndon Crotts, another government witness who, like Wood, was granted immunity from prosecution. The testimony to which he objects is as follows:

Q Are those the only two trips that you can recall when you brought drugs back from Miami?

A Yes, sir.

\* \* \* \* \* \*

Q Now you mentioned [a] trip [to Miami] where you saw some bales of marijuana in a house, is that right?

A Yes.

\* \* \* \* \* \*

Counsel for appellant interposed an objection at this juncture, stating that "there ha[d]n't been any charges as far as bales." In response to questioning by the trial court, the prosecutor explained that he was attempting to show a pattern of dealing. The court then advised that it would sustain the objection unless questioning by government counsel related directly to the charges in the indictment. The questioning continued.

Q Ms. Herndon, do you recall seeing other people at the home of [coconspirators] Bobby Hernandez and Kim Craig when you made some of these trips to Miami?

A There were other people . . . .

Q Do you recall a person who went by the name of Pete?

A I remember hearing the name Pete.

Q Would you describe Pete?

Defense counsel again objected, pointing out that "Pete" had never been mentioned during the course of all the proceedings in the case. The court allowed the testimony to continue briefly. After government counsel elicited a statement that "Pete" was Cuban, and counsel for appellant once again objected, the court interjected the following question: "Do you know if Mr. Heater was involved in any transactions with this man Pete?" The witness answered, "I don't have any idea if he was or not." The court then stated:

I'm going to sustain the objection and tell the jury that they should disregard this discussion about Mr. Pete and the Cuban nationality because it does not seem to tie in, and it seems to be there for the purpose of prejudice. So I'm going to ask that it be stricken.

▮ Appellant urges that this testimony was prejudicial to his case and contends that the trial court's instruction did not

cure the prejudice. We are convinced that the record as a whole does not demonstrate that the few isolated remarks to which defense counsel objected unfairly prejudiced appellant's case. While the trial court, upon repeated defense objection, may well have sought an offer of proof from government counsel rather than allow the witness to continue testifying, the court's prompt admonition to the jury to disregard evidence about "Pete and the Cuban nationality" was sufficient to cure any error that may have resulted from the admission of this evidence. *See, e.g., United States v. Taylor,* 603 F.2d 732, 735–36 (8th Cir.), *cert. denied,* 444 U.S. 982, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979); *United States v. Aaron,* 553 F.2d 43 (8th Cir. 1977); *United States v. Klein,* 546 F.2d 1259, 1263 (5th Cir. 1977). In light of this prompt admonition and the overwhelming evidence of appellant's participation in the cocaine trafficking conspiracy, we conclude that there is no substantial likelihood that the witness' statements affected the jury's verdict. *Id.*

Appellant urges one final ground for reversal. He argues that the trial court erred in admitting the testimony of prosecution witness Douglas Crow[6] concerning an April, 1978 conversation with coconspirator Craig. Appellant's argument in this regard is premised on the contention that Craig's statements during this conversation predated the formation of the drug trafficking conspiracy in question.

While it is true that a coconspirator's statements made before the inception of the conspiracy do not fall within the coconspirator exception to the hearsay rule[7] and are therefore inadmissible, *see, e.g., United States v. Tombrello,* 666 F.2d 485, 490 (11th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982), the evidence in this case belies appellant's position. Crow's testimony clearly established the formation of a conspiracy in April, 1978, the date asserted in Count I of the indictment. The witness testified as follows:

6. Crow was also granted immunity from prosecution.

7. Federal Rule of Evidence 801(d)(2)(E) states:

Q  Mr. Crow, did you meet with Kim Craig in April of 1978?

A  Yes.

\*    \*    \*    \*    \*    \*

Q  What did you talk about?

\*    \*    \*    \*    \*    \*

[A]  ... We were just talking, and she said, 'How's the flow of coke around here and the quality?'

\*    \*    \*    \*    \*    \*

I said, 'Well, not too good.' She says, 'Maybe we could work something out.' I says, 'Well, right now I couldn't afford anything. I would just have to get back with her as soon as I could probably come up with some money.' We eventually did.

Q  Did she say, 'We could come up with something'?

A  She said that she had connections where she could probably get us anything that we probably wanted.

Q  When you say 'get us' who are you talking about?

A  Whoever was ... with me. At that time I had no type of partners or anything.

\*    \*    \*    \*    \*    \*

Q  You sold cocaine; didn't you?

A  Right.

Q  And she indicated she had a supply and could provide you with some cocaine; is that it?

A  That's it.

\*    \*    \*    \*    \*    \*

Q  ... Did Kim Craig ever meet John Heater?

A  Yes.

\*    \*    \*    \*    \*    \*

Q  What role did you play in it?

A  Middle man. I introduced the two parties.

\*    \*    \*    \*    \*    \*

A statement is not hearsay if \* \* \* the statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

Q How did that introduction take place?

A Over a period of time I talked to John about the proposition that had confronted me from Kim.

\* \* \* \* \* \*

I made a couple of phone calls and told her I had someone that might be interested if the quality was right and the price was right. We dickered about it for a couple of months or a couple of weeks. . . .

\* \* \* \* \* \*

Then we finally set up an arrangement where I would come down there [to Miami] and introduce her to John.

Q What was the purpose of introducing her to John Heater?

A [T]o check out the coke.

\* \* \* \* \* \*

Q When did this happen in relation to when you saw Kim Craig in April of 1978? How long after that did you go?

A ... It could be a month or two. It is apparent from this evidence that the essence of the conspiracy, that is, the agreement, *see, e.g., United States v. Reeves*, 674 F.2d 739, 747 (8th Cir. 1982), became manifest in April, 1978.

In his brief appellant focuses on certain portions of the excerpted testimony to support his argument that no agreement to participate in illicit concerted activity had been reached in April, 1978. Specifically, he cites the portion of testimony establishing that Crow was in the drug trafficking business alone at the time of his initial conversation with Craig, only Crow and Craig haggled over the quality and price of the cocaine, and appellant did not travel to Miami until May, 1978 at the earliest. It appears from these references and the argument advanced that appellant equates his joining the conspiracy with the inception of the conspiracy itself. We reject appellant's attempted equation.

■ It is clear that one charged with conspiracy may not avoid criminal responsibility by merely having had the fortuity or foresight to join a clearly illegal venture sometime after agreement concerning its objective was reached. *See, e.g., United States v. Prescott*, 672 F.2d 882 (11th Cir. 1982); *United States v. Burchinal*, 657 F.2d 985, 990 (8th Cir.), *cert. denied*, 454 U.S. 1086, 102 S.Ct. 646, 70 L.Ed.2d 622 (1981); *United States v. Robertson*, 659 F.2d 652, 656 (5th Cir. 1981); *United States v. Wilson*, 497 F.2d 602, 605 (8th Cir.), *cert. denied*, 419 U.S. 1069, 95 S.Ct. 655, 42 L.Ed.2d 664 (1974). One who joins a conspiracy after its inception, knowing its unlawful purpose, is charged with the same responsibility as if he had been one of its instigators. *See, e.g., United States v. Burchinal, supra; United States v. Wilson, supra.* Since the evidence in this case established that appellant joined the conspiracy knowing its illicit objective and contributed his efforts to further it, he cannot prevail on his argument that Craig's statements during her April, 1978 conversation with Crow prejudiced his case.[8]

In sum, we reject appellant's contentions that admission of the testimony cited in our decision was erroneous. Accordingly, the judgment of the district court is affirmed.

---

8. We note that appellant does not argue on appeal that Craig's statements were inadmissible under the coconspirator exception to the hearsay rule. He is apparently satisfied, as we are, that the trial court correctly determined that a preponderance of evidence from a source apart from Craig's statements established that a conspiracy existed, appellant and Craig were members of the conspiracy, and the statements were made during the course and in furtherance of the illegal association. *See United States v. Bell*, 573 F.2d 1040 (8th Cir. 1978).