# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff below, Respondent,**

**vs.) No. 22-705** (Fayette County CC-10-2020-F-75)

**Julie Browning,**
**Defendant below, Petitioner.**

**FILED**

**May 19, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

The petitioner,[1] Julie Browning, was indicted along with two other defendants, Marty Browning and Sherie Titchenell, for one count of death of a child, eight-year-old Raylee Browning, by abuse in violation of West Virginia Code § 61-8D-2a(a), and one count of child neglect resulting in death of Raylee in violation of West Virginia Code § 61-8D-4a. The jury acquitted all three defendants on the abuse count in the indictment but convicted all three of them on the neglect count. On August 21, 2022, the circuit court entered an order that sentenced the petitioner to three to fifteen years of incarceration. The petitioner now appeals,[2] arguing that the circuit court erred in admitting certain evidence in violation of West Virginia Rule of Evidence 404(b) and by limiting her examination of Ms. Titchenell.

After considering the parties' written and oral arguments, as well as the record on appeal and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the conviction is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

### FACTS

The petitioner resided with Mr. Browning (who married the petitioner sometime after Raylee's death), Ms. Titchenell (the petitioner's sister), and Raylee (Mr. Browning's biological daughter) along with three other children—including B.M.[3] The three adults shared responsibility for Raylee's care and for that of the other children.

---

[1] The petitioner appears by counsel Mark Plants. The respondent State of West Virginia appears by Attorney General John B. McCuskey and Deputy Attorney General Andrea Nease Proper.

[2] The other two defendants also appeal, but we affirm their convictions separately.

[3] We refer to B.M. by her initials to protect her identity. *See* W. Va. R. App. P. 40(e).

1

On December 26, 2018, Ms. Titchenell telephoned for an ambulance to take Raylee to the hospital. Ms. Titchenell related to the 911 center that Raylee had suffered a seizure. Upon the ambulance's arrival at the defendants' home, Ms. Titchenell took Raylee's body out to it. One of the responding EMTs described Raylee as "lifeless or dead." After being transported to the hospital, Raylee was treated by a team of medical providers, including a hospital nurse who described Raylee as "lifeless, no pulse, no rhythm on [the] cardiac monitor, . . . pale, cool, no signs of life." It appeared that Raylee had been dead for some time. Raylee's body temperature was so low that the hospital's instruments (that measured temperature as low as eighty-four degrees Fahrenheit) could not detect it.

Subsequently, an autopsy performed by the State's medical examiner's office established that Raylee died from sepsis caused by necrotizing bronchial pneumonia. The State adduced medical testimony that Raylee's symptoms would not have developed suddenly, that Raylee "would be expected to manifest symptoms readily observable to a layperson" and that "[a]ny layperson would recognize the child was very ill." This evidence was reinforced by testimony from B.M. that "[y]ou could tell visibly that [Raylee] was sick. She claimed that she felt sick." According to B.M., "[w]hen [Raylee] breezed [sic] it sounded like she was snoring, you know like when a pug breathes."[4] B.M. testified that a day or two before Christmas Raylee "sounded like she couldn't breathe, like she was fighting for her air, like she was snoring." B.M. also did not see anyone give Raylee food, medicine, or water, even though Raylee could not get up to get herself food or water.

The State offered expert medical testimony that being deprived of food and water can depress the immune system and hasten illness and that there is an increased risk of mortality in somebody who is undernourished—in other words mortality can be secondary to complications of pneumonia. The State also adduced medical testimony that hydration is particularly important if someone is ill.

The State introduced significant medical testimony that a reasonable parent taking proper precautions should have detected Raylee's symptoms and intervened to provide her medical care. The medical testimony was that if the defendants had secured medical care for Raylee, she likely would have survived her illness.

The State also adduced evidence that (1) Raylee exhibited bruises, and a cigarette burn at the hospital; (2) Raylee had previously suffered a broken femur; and (3) Raylee was malnourished and that B.M. had observed Raylee drinking from a toilet. The petitioner claimed this evidence was inadmissible Rule 404(b) evidence rather than the intrinsic evidence the circuit court ruled it to be.

*RULE 404(b)-INTRINSIC VERSUS EXTRINSIC*

The petitioner argues that the circuit court erred in treating evidence of Raylee's bruises and a cigarette burn, previously broken femur, undernourishment, and dehydration as intrinsic

---

[4]B.M. explained that "pug" was a reference to the dog breed.

evidence that is not subject to the requirements of West Virginia Rule of Evidence 404(b) rather than as extrinsic evidence which is subject to the rule.

We first address the claims relating to the alleged abuse of Raylee by the petitioner and her co-defendants. Because the jury acquitted the petitioner of the abuse count in the indictment, the introduction of this evidence at trial was, at most, harmless error. *See, e.g., United States v. Heater*, 689 F.2d 783, 785 (8th Cir. 1982) (even if admission of 404(b) was error, it was harmless given that the evidence related primarily to a count on which the defendant was acquitted).

As to the claims of malnourishment and the testimony from B.M. that she observed Raylee drinking from a toilet, we believe this was intrinsic and not subject to the requirements of West Virginia Rule of Evidence 404(b). "This Court has consistently held that evidence which is 'intrinsic' to the indicted charge is not governed by Rule 404(b)." *State v. Harris*, 230 W. Va. 717, 722, 742 S.E.2d 133, 138 (2013) (per curiam). We review a circuit court's decision that evidence is intrinsic only for an abuse of discretion. *See State v. Dennis*, 216 W. Va. 331, 352, 607 S.E.2d 437, 458 (2004) ("After carefully reviewing the record, we cannot say that the trial court abused its discretion in finding that the prior acts constituted intrinsic evidence[.]"). "The abuse of discretion standard is not appellant friendly." *In re C.B.*, 245 W. Va. 666, 676, 865 S.E.2d 68, 78 (2021). "Our recent cases have held with regular consistency that an appellate court should find an abuse of discretion only when the trial court acted 'arbitrary[ily] or irrationally.'" *State v. Knuckles*, 196 W. Va. 416, 424, 473 S.E.2d 131, 139 (1996) (per curiam) (citation omitted). We do not find the circuit court's admission of this evidence as intrinsic was arbitrary or irrational.

"'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." *State v. LaRock*, 196 W. Va. 294, 312 n.29, 470 S.E.2d 613, 631 n.29 (1996) (citations omitted). "If the proffer[ed evidence] fits in to the 'intrinsic' category, evidence of other crimes should not be suppressed when those facts come in as *res gestae*—as part and parcel of the proof charged in the indictment." *Id.*, 470 S.E.2d at 631 n.29. In this case, we conclude that the deprivation of nutrition and hydration were part of a single criminal episode or were necessary preliminaries to the crime of neglect causing death, that is, the neglect in failing to provide proper nutrition and hydration to Raylee constituted part of the cause of the pneumonia that contributed to her death. This evidence was "part and parcel of the proof charged in the indictment." Consequently, the evidence of Raylee's malnutrition and dehydration was intrinsic evidence, and we find that the circuit court did not err in admitting it.

*CROSS-EXAMINATION*

The petitioner next asserts that her rights were violated because she "was prohibited from freely cross-examining Mrs. Titchenell because the [circuit] [c]ourt limited cross-examination of the co-defendants." We disagree.

During trial, Ms. Titchenell testified in her own defense. At the end of her testimony, the circuit court asked if counsel for the petitioner had any questions. He replied "No, Your Honor." The petitioner now contends that she was denied the right to question Ms. Titchenell. The basis for the petitioner's argument is that earlier in the trial, after Ms. Browning testified, the circuit

court directed counsel for Ms. Titchenell to "ask any questions that have not already been answered, okay." The petitioner's brief does not identify that she objected to the process she now complains about on appeal. *See* W. Va. R. App. P. 10(c)(7) ("The argument [section in a petitioner's brief] must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal."); *see also id.,* clerk's comments ("Briefs must carefully cite to the record, and must specifically set forth where in the record each assignment of error was preserved."). Therefore, we conclude that the petitioner did not object at trial to the trial process about which she now complains on appeal. Consequently, Ms. Browning's lack of objection precludes review of her claim. *See Johnson v. State Dep't of Motor Vehicles*, 173 W. Va. 565, 571, 318 S.E.2d 616, 622 (1984) ("As a general rule, nonjurisdictional issues not objected to at trial are deemed waived and may not be raised for the first time on appeal.").

We additionally observe another basis that prevents our review of the petitioner's claim. While the petitioner's brief asserts that her "counsel could not adequately flush out potential inconsistencies of [Ms. Titchenell's] testimony[,]" the petitioner's brief makes no effort to demonstrate what these inconsistencies were. "It is not our job to put flesh on the bare bones of an underdeveloped argument[.]" *United States v. Mathur*, 624 F.3d 498, 508 (1st Cir. 2010). "'Few principles are more a part of the warp and woof of appellate practice than the principle that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived[.]'" *Metro Tristate, Inc. v. Pub. Serv. Comm'n*, 245 W. Va. 495, 503 n.12, 859 S.E.2d 438, 446 n.12 (2021) (citation omitted). We thus decline to address the petitioner's claim.

For the above reasons, the judgment of the Circuit Court of Fayette County, West Virginia, is affirmed.

Affirmed.

**ISSUED: May 19, 2025**

**CONCURRED IN BY:**

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Charles S. Trump IV
Judge Daniel W. Greear, sitting by temporary assignment

**DISQUALIFIED:**

Justice C. Haley Bunn