# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

**May 19, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**State of West Virginia,**
**Plaintiff below, Respondent,**

**vs.) No. 22-710** (Fayette County CC-10-2020-F-74)

**Marty Browning,**
**Defendant below, Petitioner.**

## MEMORANDUM DECISION

The petitioner,[1] Marty Browning, was indicted along with two other defendants, Julie Browning and Sherie Titchenell, for one count of death of a child, eight-year-old Raylee Browning, by abuse in violation of West Virginia Code § 61-8D-2a(a), and one count of child neglect resulting in death of Raylee in violation of West Virginia Code § 61-8D-4a. After a joint trial lasting six days, the jury acquitted all three defendants on the abuse count in the indictment but convicted all three of them on the neglect count. By order entered on August 21, 2022, the circuit court sentenced the petitioner to three to fifteen years of incarceration. The petitioner now appeals,[2] arguing that the circuit court erred by (1) improperly admitting certain evidence as intrinsic evidence rather than excluding it as inadmissible extrinsic evidence under West Virginia Rule of Evidence 404(b); (2) limiting his ability to examine witnesses at trial; (3) denying him a speedy trial; and (4) improperly admitting hearsay testimony and violating the Confrontation Clauses of the United States and West Virginia Constitutions.

After considering the parties' written and oral arguments, as well as the record on appeal and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the conviction is appropriate under Rule 21 of the Rules of Appellate Procedure.

### *FACTS*

The petitioner lived together with Ms. Browning (who married the petitioner sometime after Raylee's death), Ms. Titchenell (Ms. Browning's sister), Raylee (the petitioner's biological

---

[1]The petitioner appears by counsel Steven K. Mancini. The respondent State of West Virginia appears by Attorney General John B. McCuskey and Deputy Attorney General Andrea Nease Proper.

[2]The other two defendants also appeal, but we affirm their convictions separately.

1

daughter), and three other children—including B.M.[3] From 2014 to January 2018, the family lived in Mount Lookout, Nicholas County, West Virginia. In 2018, the family moved to Oak Hill, Fayette County, West Virginia. While in Nicholas County, the children were in public school. After the family moved to Fayette County, the family began to homeschool the children. The three adults shared responsibility for Raylee's care and for that of the other children.

On December 26, 2018, Ms. Titchenell called for an ambulance for Raylee claiming that Raylee had suffered a seizure. After the ambulance's arrival, Ms. Titchenell took Raylee's body to it. One of the responding EMTs described Raylee as "lifeless or dead," "wasn't breathing," and "cyanotic." After being transported to Plateau Medical Center, Raylee was treated by a team of medical providers, including a nurse who described Raylee as "lifeless, no pulse, no rhythm on [the] cardiac monitor, . . . pale, cool, no signs of life." It appeared that Raylee had been dead for some time. Raylee's body temperature was so low that Plateau's instruments (which could measure temperature as low as eighty-four degrees Fahrenheit) could not detect it.

Subsequently, an autopsy determined that Raylee died from sepsis caused by necrotizing bronchial pneumonia. The State adduced medical testimony that Raylee's symptoms would not have developed suddenly, that Raylee "would be expected to manifest symptoms readily observable to a layperson," and that "[a]ny layperson would recognize the child was very ill." This evidence was reinforced by testimony from B.M. that several days before Christmas "[y]ou could tell visibly that [Raylee] was sick. She claimed that she felt sick." According to B.M., two or three days before Christmas, "[w]hen [Raylee] breezed [sic] it sounded like she was snoring, you know like when a pug breathes."[4] B.M. testified that Raylee, "sounded like she couldn't breathe, like she was fighting for her air, like she was snoring." B.M. also did not see anyone give Raylee food, medicine, or water, even though Raylee could not get up to get herself food or water.

The State offered expert medical testimony that being deprived of food and water can depress the immune system and hasten illness and that there is an increased risk of mortality in somebody who is undernourished—that is, mortality can be secondary to complications of pneumonia. The State also adduced medical testimony that hydration is particularly important if someone is ill.

The State introduced significant medical testimony that a reasonable parent taking proper precautions should have detected Raylee's symptoms and intervened to provide her with medical care. The State's evidence was that with medical intervention Raylee would likely have survived. It also adduced testimony that for children who are eight years old, the provision of nutrition and hydration is the responsibility of a caretaker.

*RULE 404(b)-INTRINSIC VERSUS EXTRINSIC*

The petitioner argues that the circuit court erred in admitting certain evidence at trial as intrinsic evidence, and thus not subject to the limitations of West Virginia Rule of Evidence 404(b),

---

[3]We refer to B.M. by her initials to protect her privacy. *See* W. Va. R. App. P. 40(e).

[4]B.M. explained that "pug" was a reference to the breed of dog.

2

rather than as extrinsic evidence which is subject to Rule 404(b). The petitioner asserts numerous pieces of evidence were erroneously admitted by the circuit court in this regard: (1) Raylee was denied food and water and had to drink from the toilet; (2) observation of a burn mark on Raylee by personnel at Plateau; (3) failure of the defendants to follow through with referrals made by Raylee's pediatrician to take Raylee to a dermatologist and psychiatrist; (4) that Raylee had suffered a broken femur some time before she died; (5) contusions and scabs on Raylee's body at different points in her life before she died; (6) Raylee was suspected of coming from an abusive home and was reported not to have wanted to return home from school at the end of the 2015 and 2016 school years; (7) the family home was filled with tension; (8) the implication that Raylee's education was being neglected because she was not homeschooled with her stepsiblings; (9) Raylee slept on a mattress on the floor; (10) Raylee was treated differently (implied negatively) by the defendants compared to treatment of the other children; and (11) Raylee was always in trouble and was punished without cause. We find the petitioner is not entitled to a new trial based upon the introduction of this evidence.

As to the evidence of Raylee's malnutrition and dehydration, we find that the circuit court did not abuse its discretion in finding this evidence was intrinsic evidence and therefore, not subject to Rule 404(b). *See State v. Dennis*, 216 W. Va. 331, 352, 607 S.E.2d 437, 458 (2004) ("After carefully reviewing the record, we cannot say that the trial court abused its discretion in finding that the prior acts constituted intrinsic evidence, not subject to Rule 404(b) analysis."). "The abuse of discretion standard is not appellant friendly." *In re C.B.*, 245 W. Va. 666, 676, 865 S.E.2d 68, 78 (2021). "Our recent cases have held with regular consistency that an appellate court should find an abuse of discretion only when the trial court acted 'arbitrar[ily] or irrationally.'" *State v. Knuckles*, 196 W. Va. 416, 424, 473 S.E.2d 131, 139 (1996) (per curiam) (citation omitted); *see, e.g., State v. Beard*, 194 W. Va. 740, 748, 461 S.E.2d 486, 494 (1995) ("An appellate court should find an abuse of discretion only when the trial court has acted arbitrarily or irrationally."). The circuit court did not act arbitrarily or irrationally in concluding this evidence was intrinsic.

"'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." *State v. LaRock*, 196 W. Va. 294, 312 n.29, 470 S.E.2d 613, 631 n.29 (1996) (citations omitted). "If the proffer[ed evidence] fits in to the 'intrinsic' category, evidence of other crimes should not be suppressed when those facts come in as *res gestae*—as part and parcel of the proof charged in the indictment." *Id.*, 470 S.E.2d at 632 n.29. In this case, we conclude that the lack of nutrition and hydration were part of a single criminal episode or were necessary preliminaries to the crime of neglect causing death, that is, the neglect in failing to provide proper nutrition and hydration to Raylee constituted a cause of the pneumonia that contributed to Raylee's death. This evidence was "part and parcel of the proof charged in the indictment." Consequently, the evidence of Raylee's malnutrition and dehydration was intrinsic evidence, and we conclude the circuit court did not err in admitting it.[5]

---

[5]The petitioner also claims error in that he contends some of the events at issue occurred in Nicholas County and not Fayette County thus rendering the evidence inadmissible in a Fayette County trial. The petitioner cites no authority for the proposition that intrinsic evidence is only admissible if it occurs in the county of prosecution. In the absence of supporting legal authority, we do not address it. *See* W. Va. R. App. P. 10(c)(7) ("The brief must contain an argument . . .

We find introduction of the remaining evidence was, at most, harmless error.

As to the claims of the burn, broken femur, bruises, contusions, scabs, sleeping arrangements, and abusive home life, these are all evidence of abuse. The jury acquitted the petitioner of abuse causing death under Count 1 of the indictment. Consequently, admission of this evidence was harmless error. *See, e.g.*, *United States v. Heater*, 689 F.2d 783, 785 (8th Cir. 1982) (even if admission of 404(b) was error, it was harmless given that the evidence related primarily to a count on which the defendant was acquitted).

As to the remainder of the evidence that the petitioner challenges, we conclude that even if erroneously admitted, the evidence did not prejudice him.[6] The erroneous admission of Rule 404(b) evidence is nonconstitutional error. *See, e.g*., *Johnson v. Mutter*, No. 19-0788, 2020 WL 6624970, at *3 (W. Va. Nov. 4, 2020) (memorandum decision). "To determine actual prejudice, '[o]ur cases consistently have held that nonconstitutional errors are harmless unless the reviewing court has grave doubt as to whether the [error] substantially swayed the verdict.'" *State v. Kessler*, 248 W. Va. 289, 298, 888 S.E.2d 789, 798 (2023) (citation omitted). We have thoroughly examined the entire record, and we find that the jury was not swayed to convict based on this evidence considering the other substantial evidence of the defendant's guilt. *See id.,* 888 S.E.2d at 798 ("We may deem the admission of 404(b) evidence mere harmless error if the government presents other convincing or overwhelming evidence of guilt.").

### *LIMITATIONS ON EXAMINATION OF WITNESSES*

The petitioner argues that the circuit court erred by disallowing the three defense attorneys in the joint trial from conducting three separate direct examinations of defense witnesses.[7] The petitioner also complains that the circuit court limited his cross-examination of Ms. Browning.

"Our review of the trial court's manner of conducting the trial is for an abuse of discretion[.]" *State v. Davis*, 232 W. Va. 398, 414, 752 S.E.2d 429, 445 (2013) (per curiam). "We

---

citing the authorities relied on[.]"); *Anthony C. v. Sarah C*., No. 22-637, 2023 WL 6857317, at *2 (W. Va. Oct. 18, 2023) (memorandum decision) ("Because petitioner has failed to substantiate his claim—with . . . applicable legal authority—we decline to address this assignment of error."); *State v. Brellahan*, No. 19-0870, 2020 WL 6482745, at *2 (W. Va. Nov. 4, 2020) (memorandum decision) (similar).

[6]We acknowledge our observation that "where a trial court erroneously admits Rule 404(b) evidence, prejudicial error is likely to result." *State v. McGinnis*, 193 W. Va. 147, 153, 455 S.E.2d 516, 522 (1994). But "likely" does not mean "necessarily" and we have found Rule 404(b) errors harmless in the past. *See, e.g., State v. Bowling*, 232 W. Va. 529, 550, 753 S.E.2d 27, 48 (2013) (per curiam); *State v. McWhorter*, No. 19-1050, 2020 WL 7389384, at *7 (W. Va. Dec. 16, 2020) (memorandum decision); *State v. Meadows*, No. 14-0952, 2015 WL 6181490, at *3 (W. Va. Oct. 20, 2015) (memorandum decision).

[7]The State asserts that the petitioner waived appellate review of the circuit court's trial procedure regarding direct examination of defense witnesses. Our review of the trial transcript shows that the petitioner did preserve this issue—if only barely.

4

generally have held that '[a] trial court has wide latitude in the conduct of a trial, . . . particularly in matters pertaining to the examination of witnesses, and its rulings in relation to the examination of witnesses will not be reversed except when there has been a plain abuse of its discretion.'" *State v. Lambert*, 236 W. Va. 80, 92, 777 S.E.2d 649, 661 (2015) (quoting *State v. Layton*, 189 W. Va. 470, 502-03, 432 S.E.2d 740, 772-73 (1993) (internal quotations and citation omitted)); *see also* Syl. pt. 3, *State v. Delorenzo*, 247 W. Va. 707, 885 S.E.2d 645 (2022) ("The trial court has an obligation to all parties to ensure that the trial is conducted in a fair manner. This obligation includes a duty to supervise the direct and cross-examination of each party's witnesses."). Abuse of discretion is a highly deferential mode of review. *Tennant v. Marion Health Care Found., Inc.*, 194 W. Va. 97, 106, 459 S.E.2d 374, 383 (1995).

After the State rested, and before the three co-defendants called any witnesses, the circuit court ruled that not each defense counsel was entitled to examine each defense witness:

> THE COURT: Well, all three of you don't get to direct examination of the witness. [sic] I mean, and the way it's happened in the past is one counsel assigned – ever which one is assigned, will take witness A, then before he finishes with witness A, he'll ask co-counsel, you got any questions you want me to ask, or whatever; and if not, then the witness goes to him.[8]

The petitioner has cited no authority supporting his contention that the circuit court lacked the discretion to limit direct examination in the manner that it did (especially given the concerted way the defendants tried the case), nor has he articulated any prejudice or unfairness that he suffered from the procedure employed by the circuit court. Consequently, we do not find that the circuit court abused its broad discretion in its management of the trial process.

The petitioner also claims that the circuit court erred when it limited his cross-examination of Ms. Browning. The petitioner has not shown in his brief where he objected below as to the cross-examination procedure the circuit court employed. Such an omission violates the requirement of West Virginia Rule of Appellate Procedure 10(c)(7), which mandates that the argument section of a petitioner's brief "contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal." *See also id.*, clerk's comments ("Briefs must carefully cite to the record, and must specifically set forth where in the record each assignment of error was preserved."). We therefore decline to address this issue.

*SPEEDY TRIAL*

The petitioner next argues that the circuit court erred in denying his motion to dismiss the case against him under the three-term rule, West Virginia Code § 62-3-21. We disagree.

> The three-term rule is shorthand for West Virginia Code § 62-3-21 which is the legislative determination of what counts as a speedy trial under Article III,

---

[8]Presumably the "him" the circuit court identified was the prosecutor for cross-examination.

5

Section 14 of the West Virginia Constitution. Syl. Pt. 1, *Good v. Handlan*, 176 W. Va. 145, 342 S.E.2d 111 (1986). The three-term rule generally requires a defendant be tried within three terms of court after an indictment or presentment is returned. Syl. Pt. 1, *State ex rel. Spadafore v. Fox*, 155 W. Va. 674, 186 S.E.2d 833 (1972) ("Under the provisions of Code, 62-3-21, as amended, the three unexcused regular terms of court that must pass before an accused can be discharged from further prosecution are regular terms occurring subsequent to the ending of the term at which the indictment was returned. The term at which the indictment was returned can not [sic] be counted as one of the three terms."). The three-term rule contains several exceptions. For example, if the defendant procures a continuance, that term is not counted against the three-term rule. *Id*. at Syl. Pt. 2 ("Any term at which a defendant procures a continuance of a trial on his own motion after an indictment is returned, or otherwise prevents a trial from being held, is not counted as one of the three terms in favor of discharge from prosecution under the provisions of Code, 62-3-21, as amended."). If the defendant is not tried within the requisite three unexcused terms of court, the defendant "shall be forever discharged from prosecution for the offense[.]" W. Va. Code § 62-3-21.

*Law. Disciplinary Bd. v. Taylor*, No. 23-133, 2024 WL 4767010, at *6 n.26 (W. Va. Nov. 13, 2024) (memorandum decision).

"This Court's standard of review concerning a motion to dismiss an indictment is, generally, *de novo*." Syl. pt. 1, in part, *State v. Grimes*, 226 W. Va. 411, 701 S.E.2d 449 (2009).

In the Fayette County Circuit Court during the period pertinent to the petitioner's trial, terms of court began "on the second Tuesday in January, May, and September." W. Va. Tr. Ct. R. 2.12 (1999). The petitioner was indicted in the May 2020 term of court and was tried in the May 2022 term of court. The petitioner asserts that he was not tried within the requisite three-terms of court because the May 2021, September 2021, and January 2022 terms of court passed without trial or excuse.[9] We disagree.

The record reflects, and the petitioner acknowledges, that he moved for continuances during the May 2021 and the September 2021 terms of courts. The petitioner asserts that these terms are not excused terms because he requested a continuance within the same term of court, rather than a continuance until the next term of court. The petitioner cites no authority for this proposition. Contrary to the petitioner's argument, we have long held that "[a]ny term at which a defendant procures a continuance of a trial on his own motion after an indictment is returned, or otherwise prevents a trial from being held, is not counted as one of the three terms in favor of discharge from prosecution under the provisions of Code, 62-3-21, as amended." Syl. pt. 2, *State ex rel. Spadafore v. Fox*, 155 W. Va. 674, 186 S.E.2d 833 (1972). Because the petitioner moved to continue his trial during the May 2021 and the September 2021 terms of court, those are excused terms. Therefore, we conclude that the petitioner was tried within the requisite three terms of court

---

[9]The petitioner concedes that continuances from the September 2020 and January 2021 terms of court were excused and do not count against the three-term rule. The record also reflects that the case was continued from the January 2022 term of court over petitioner's objection.

as required by the three-term rule. As such, the circuit court did not err in denying the petitioner's motion to dismiss the indictment under the three-term rule.

*CONFRONTATION CLAUSE AND HEARSAY*

The petitioner contends that the circuit court erred in allowing certain alleged hearsay statements to be admitted into evidence that "were made directly against her [sic] right to confront her [sic] accuser." We do not agree.

"Three separate levels of scrutiny apply to Confrontation Clause claims: The circuit court's order is reviewed for abuse of discretion; its factual findings are reviewed for clear error; and its legal rulings are reviewed de novo." *State v. Martin*, No. 13-0112, 2013 WL 5676628, at *2 (W. Va. Oct. 18, 2013) (memorandum decision).

In Syllabus Point 6 of *State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006), *holding modified on other grounds by State v. Jako*, 245 W. Va. 625, 862 S.E.2d 474 (2021), we held:

> Pursuant to *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L.Ed.2d 177 (2004), the Confrontation Clause contained within the Sixth Amendment to the *United States Constitution* and Section 14 of Article III of the *West Virginia Constitution* bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness.

"*Crawford* makes clear that only 'testimonial statements' cause the declarant to be a 'witness' subject to the constraints of the Confrontation Clause. Non-testimonial statements by an unavailable declarant, on the other hand, are not precluded from use by the Confrontation Clause." *Id*. at 373, 633 S.E.2d at 318. "[A] testimonial statement is, generally, a statement that is made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id*. Syl. pt. 8. The United States Supreme Court has explained what constitutes a testimonial statement, "[i]n the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Ohio v. Clark,* 576 U.S. 237, 245 (2015) (citations omitted).

"Hearsay" is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." W. Va. R. Evid. 801(c). "[A]dmission of non-testimonial hearsay . . . continue[s] to be policed by the Rules of Evidence[.]" *State v. Kennedy*, 229 W. Va. 756, 764, 735 S.E.2d 905, 913 (2012). "[T]rial courts have broad discretion in making evidentiary rulings[.]" *State v. Beard*, 194 W. Va. 740, 748, 461 S.E.2d 486, 494 (1995). Consequently, "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 61, 511 S.E.2d 469, 472 (1998).

7

● Testimony of Carrie Ciliberti

The first portion of testimony that the petitioner argues should have been excluded is from Raylee's former physical education teacher in the Nicholas County school system, Carrie Ciliberti. Ms. Ciliberti testified that while in school with Raylee, Raylee asked if Ms. Ciliberti wanted to see her "boo-boos." Ms. Ciliberti responded affirmatively, and Raylee displayed bruises and scabs on her legs. Raylee then told Ms. Ciliberti that "if you have any questions, I'm not allowed to answer you; you have to call my daddy and ask him." We do not believe that this is testimonial hearsay.

Raylee made her statement to a schoolteacher. Out-of-court statements to schoolteachers "are much less likely to be testimonial than statements to law enforcement officers." *Clark*, 576 U.S. at 246.[10] Moreover, Raylee's young age supports our conclusion that her statement to Ms. Ciliberti was non-testimonial as "[s]tatements by very young children will rarely, if ever, implicate the Confrontation Clause." *Id*. at 247–48. Additionally, "[t]here is no indication that the primary purpose of the conversation was to gather evidence for . . . prosecution." *Id*. at 247. Given that Raylee was in the first grade when she gave her statement to Ms. Ciliberti, "it is extremely unlikely that a . . . child in [Raylee's] position would intend h[er] statements to be a substitute for trial testimony. On the contrary, a young child in these circumstances would simply want the abuse to end, would want to protect other victims, or would have no discernible purpose at all." *Id*. at 248.

Additionally, Raylee was asking a question as opposed to making a statement—"do you want to see my boo-boos?' To the extent that this evidence had probative value, it was in the observation by Ms. Ciliberti of Raylee's injuries as opposed to anything Raylee said. A child exhibiting bruises and scabs to a teacher is not testimonial evidence. Indeed, Raylee expressly declined to offer anything "testimonial" such as identifying the person or persons who caused her injuries or how the injuries were caused.

Finally, after reviewing the record in this case, we conclude that Ms. Ciliberti's testimony concerning what Raylee told her was not offered for the truth of the matter asserted but to show why Ms. Ciliberti reported the matter to Child Protective Services. The Confrontation Clause does not bar admission of statements when not admitted for the truth of the matter asserted, *State v. Morris*, 227 W. Va. 76, 81, 705 S.E.2d 583, 588 (2010) (per curiam), since such a statement is definitionally not hearsay.

Considering the relevant circumstances, Raylee's statement was not testimonial, and its introduction did not violate the Confrontation Clause.

---

[10]Although Ms. Ciliberti was a mandatory reporter of abuse and neglect and reported her concerns that Raylee was being abused and neglected to Child Protective Services, "mandatory reporting statutes alone cannot convert a conversation between a concerned teacher and her student into a law enforcement mission aimed primarily at gathering evidence for a prosecution." *Clark*, 576 U.S. at 249.

● Testimony of B.M.

At trial B.M. testified that Ms. Titchenell had directed her to lie to Child Protective Services and that if asked by them about what punishments were inflicted in the home to respond that the children were fine and happy, which was not the case. Since B.M. did not testify that Mr. Browning told her to lie, we conclude that Mr. Browning was not prejudiced by B.M's testimony in this regard.[11] We additionally observe that this testimony served to explain why B.M.'s trial testimony differed from what B.M. previously told authorities regarding Raylee and was not, therefore, hearsay.

The petitioner further faults the circuit court for allowing B.M. to testify that Ms. Titchenell claimed that Raylee was not sick and that "she was faking it for attention." B.M. also testified that Ms. Browning told Raylee she would be spending Christmas in the hospital and asked if Raylee would be okay with that. B.M. testified that Raylee replied she would be. We do not believe that this was testimonial as "[s]tatements made between . . . family members are not testimonial in nature because they are not made with the primary purpose of substituting for trial testimony." *Duncan v. Sec'y*, 717 F. Supp. 3d 1178, 1194 (N.D. Fla. 2024); *see generally Rice v. Hudson*, No. 1:06CV2264, 2009 WL 2410436, at *3 (N.D. Ohio Aug. 4, 2009) ("Courts have generally held that statements made in private conversations to friends and family members are not testimonial.").

To the extent that this latter testimony may be hearsay, we believe that West Virginia Rule of Evidence 803(3) controls and justifies its admission. West Virginia Rule of Evidence 803(3) provides that the following evidence is not excluded by the hearsay rule, regardless of the availability of the declarant as a witness:

> A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

---

[11]The petitioner contends that the circuit court ruled prior to trial that no statements from the defendants were admissible during the State's case-in-chief. At oral argument before us, the State asserted that this was too broad a reading of the written order memorializing the circuit court's ruling and argued that a proper reading of the circuit court's written order shows it was limited to statements given as part of the police investigation in this case. We do not need to determine the reach of the circuit court's order as Mr. Browning's brief does not identify where he objected at trial to the circuit court's pretrial order regarding the testimony of which he now complains on appeal. We therefore consider any argument he makes regarding the order to be waived. *See* W. Va. R. App. P. 10(c)(7) ("The argument [section the petitioner's brief] must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal."); *see also id.*, clerk's comments ("Briefs must carefully cite to the record, and must specifically set forth where in the record each assignment of error was preserved.").

The challenged testimony reflected the defendants' respective states of mind in the days before Raylee died. Ms. Titchenell's statement that Raylee was faking an illness proved her intent to deny Raylee necessary medical care. Similarly, Ms. Browning's statement about the need for Raylee to be hospitalized shows her awareness of Raylee's illness and her intent to deny Raylee medical care. These statements made shortly before Raylee died, are a manifestation of the defendants' respective states of mind relating to their neglect of Raylee. Accordingly, because the statements were admissible under the state of mind exception to the hearsay rule as contained in West Virginia Rule of Evidence 803(3). It was not error for the circuit court to have admitted B.M.'s testimony.

● Testimony of Richard Looney

At trial, Richard Looney, a friend of Mr. Browning, testified that he was present on December 20, 2018, when Mr. Browning received a telephone call from Ms. Browning. When the State asked Mr. Looney about what the conversation was regarding, Mr. Browning's lawyer objected because "[t]hat would violate [the] confrontation clause unless these witnesses testify first."[12] The circuit court overruled the objection and Mr. Looney related that Mr. Browning told him that Ms. Browning had told him on the telephone call that Raylee "was sick and needed to go to the hospital."

Mr. Looney's trial testimony did not implicate the Confrontation Clause. "It is well established that statements to friends and acquaintances in a social setting do not constitute testimonial hearsay under *Crawford*." *Abby v. Prelesnik*, No. 2:08-CV-15333, 2011 WL 7625806, at *18 (E.D. Mich. Apr. 21, 2011), *report and recommendation adopted*, No. 08-15333, 2012 WL 1019169 (E.D. Mich. Mar. 26, 2012), *aff'd sub nom. Abby v. Howe*, 742 F.3d 221 (6th Cir. 2014). Therefore, the admission of this evidence was not error.

For the above reasons, the judgment of the Circuit Court of Fayette County, West Virginia, is affirmed.

Affirmed.

**ISSUED: May 19, 2025**

**CONCURRED IN BY:**

Chief Justice William R. Wooton
Justice Elizabeth D. Walker

---

[12]We do not address any hearsay claim the petitioner raises on appeal as to this testimony because an objection based on the Confrontation Clause does not preserve a hearsay claim. *See Francois v. State*, 711 S.E.2d 45, 47 (Ga. Ct. App. 2011) (citations omitted) ("'There is a distinct difference' between a confrontation clause objection and an objection based on hearsay. One does not preserve the other."). To the extent that the petitioner relies on the circuit court order discussed above in this regard, *see* supra n. 11, we believe the argument is waived. *Id*.

10

Justice Tim Armstead
Justice Charles S. Trump IV
Judge Daniel W. Greear, sitting by temporary assignment.

**DISQUALIFIED:**

Justice C. Haley Bunn